ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

USCA Case Nos. 15-1495, 16-1008, 16-1011 Consolidated Cases
_____

JOHN A. TAYLOR,

Petitioner,

vs.

MICHAEL P. HUERTA, and
FEDERAL AVIATION
ADMINISTRATION,

Respondents.

_____

PETITION FOR REVIEW FROM
THE FEDERAL AVIATION ADMINISTRATION
_____

**BRIEF OF PETITIONER
JOHN A. TAYLOR**
_____

June 14, 2016

John A. Taylor*, pro se*
4115 Ferrara Drive
Silver Spring, Maryland 20906
(301) 942-3040
jat@wolfenstock.com

## CERTIFICATE OF COMPLAINCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE
## <u>REQUIREMENTS AND TYPE STYLE REQUIREMENTS</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,951 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word v.14.0 in 14 point Times New Roman.

.

> _____ /s/ *John A. Taylor*
> John A. Taylor,
> Petitioner
> Dated: June 14, 2016

i

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to D.C. Cir. Rule 28(a)(1), Petitioner submits the following:

### Parties and Amici:

Parties:

John A. Taylor, Petitioner;

Michael P. Huerta, Respondent;

Federal Aviation Administration, Respondent

Intervenors:

There are no intervenors in this matter.

*Amici Curiae*:

There are no *amici curiae* in this matter. TechFreedom has indicated an intention to file an *amicus* brief supporting one or more of Petitioner's arguments.

### Rulings Under Review:

**Case No. 15-1495:** Registration and Marking Requirements for Small Unmanned Aircraft, 80 Fed. Reg. 78593 (Dec.16, 2015). JA9-64.

**Case No. 16-1008:** AC91-57A - Model Aircraft Operating Standards. JA3-5. (*See* Revision of Advisory Circular 91-57 Model Aircraft Operating Standards, 80 Fed. Reg. 54367 (Sept. 9, 2015)). JA2.

**Case No. 16-1011:** Clarification of the Applicability of Aircraft Registration Requirements for Unmanned Aircraft Systems (UAS) and Request for Information Regarding Electronic Registration for UAS, 80 Fed. Reg. 63912 (Oct. 22, 2015). JA6-8.

**Related Cases:**

Petitioner is unaware of any related cases.

iii

# **TABLE OF CONTENTS**

Page

Certificate of Compliance with Type-Volume Limitation,

   Typeface Requirements and Type Style Requirements . . . . . . . . . . . . . . .  i

Certificate as to Parties, Rulings and Related Cases . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Glossary of Abbreviations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xv

Petitioner's Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Petitioner's Statement of the Standard of Review . . . . . . . . . . . . . . . . . . . . . 2

Petitioner's Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statutes and Regulations (See Addendum) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Petitioner's Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Petitioner's Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Petitioner's Statement Regarding Standing (See Addendum) . . . . . . . . . . . . . 10

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   I.     Historical Background:  the FAA's Treatment of

          Recreational Model Aircraft . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   II.    The Orders Violate § 336(a) of Pub. L. 112-95 . . . . . . . . . . . . . . . . . 26

iv

A.  The Interim Final Rule Violates § 336(a) by Promulgating

a Rule or Regulation Regarding Model Aircraft . . . . . . . . . . . .  26

1.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

2.  Part 48 is a New Regulation in Violation of § 336(a) . . . . . . . .  27

3.  The Application of Part 47 is Itself a New Rule in

Violation of § 336(a), and Does not Justify the

Creation of a New Part 48 in any Event . . . . . . . . . . . . . . . . .  27

4.  The Requirement of Oaths Prior to

Registration Violates § 336(a) . . . . . . . . . . . . . . . . . . . . . . . . .  31

B.  The Clarification and Request for Information Violates § 336(a) . .  31

C.  AC91-57A Violates § 336(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

III.   The Orders are Beyond the Scope of the

FAA's Statutory Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

A.  The Interim Final Rule is Beyond the Scope of the

FAA's Statutory Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

1.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

2.  The FAA has Long Acknowledged that

Recreational Model Aircraft are Not

Under FAA Authority as Aircraft . . . . . . . . . . . . . . . . . . . . . .  33

3.  Pub. L. 112-95 Codified the FAA's

Then-Existing Distinction Between

Recreational Model Aircraft and Civil Aircraft . . . . . . . . . . .  37

4.  It would be Inconsistent with the Clear Legislative

intent of § 336(a) to Bring Recreational Model

Aircraft Under the Voluminous Body of Law

Applicable to Civil Aircraft . . . . . . . . . . . . . . . . . . . . . . . . . .  38

5.  Registering Model Aircraft Owners is Not Authorized

by 49 U.S.C. § 44101(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

6.  The Requirement of Oaths is not Authorized

by 49 U.S.C. § 44101(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

B.  The Clarification and Request for Information is Beyond

the Scope of the FAA's Statutory Authority . . . . . . . . . . . . .  40

C.  AC91-57A is Beyond the  Scope of

the FAA's Statutory Authority . . . . . . . . . . . . . . . . . . . . . . . . 41

IV.  The Orders are Arbitrary and Capricious . . . . . . . . . . . . . . . . . . . . . . . . 44

A.  The Interim Final Rule is Arbitrary and Capricious . . . . . . . . . . . . . 44

1.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

vi

2. The FAA Denies that a Change has Been Made,

and Therefore Fails to Provide the Justification

for Change Required by the APA . . . . . . . . . . . . . . . . . . . . . . 46

3. Laws Applicable to Aircraft have no Rational

Application to Model Aircraft and Defy Compliance . . . . . . 48

4. The FAA's Interpretation would Render the Statute

Irrationally, and Unconstitutionally, Vague . . . . . . . . . . . . . 51

B. The Clarification and Request for Information

is Arbitrary and Capricious . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

C. AC91-57A is Arbitrary and Capricious . . . . . . . . . . . . . . . . . . . . . . 53

1. The FAA Fails to State a Rationale for Applying

the DC-SFRA  to Model Aircraft . . . . . . . . . . . . . . . . . . . . . . 53

2. AC91-57A is not Rationally Related to Preventing

Civil Aircraft Attacks on the Nation's Capital . . . . . . . . . . . 54

V. The Orders Violate the Notice and Comment Requirements

of the Administrative Procedure Act . . . . . . . . . . . . . . . . . . . . . . . . . 57

A. The Interim Final Rule Violated the Notice and Comment

Requirements of the Administrative Procedure Act . . . . . . . . . . 57

1. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

vii

2. The Interim Final Rule does not Address an Imminent Hazard Requiring Emergency Action . . . . . . . . . . . . . . . . . . . . . . . . . . 59

3. Any Timing Concerns were Caused by the FAA's Own Knowing Delay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

4. The Application of Part 47 Registration was Also Legislative Rulemaking, Requiring Notice and Comment . . . . . . . . . . . . . . 62

B. The Clarification and Request for Information Violated the Notice and Comment Requirements of the Administrative Procedure Act . . . . . . . . . . 62

C. AC91-57A Violated the Notice and Comment Requirements of the Administrative Procedure Act . . . . . . . . . . . . . . . . . . . . . 63

VI. Timeliness of Petitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

A. Timeliness of Case No. 16-1011 (Clarification and Request for Information) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

B. Timeliness of Case No. 16-1008 (AC91-57A) . . . . . . . . . . . . . . . . 67

Conclusion and Relief Sought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

viii

# TABLE OF AUTHORITIES

## Cases:

*Air Transp. Ass'n of Am. v. Dep't of Transp.*, 900 F.2d 369 (D.C. Cir. 1990), *vacated (on grounds of mootness),* 498 U.S. 1077, 111 S. Ct. 944, 112 L. Ed. 2d 1033 (1991),* and *vacated,* 933 F.2d 1043 (D.C. Cir. 1991) . . . 59, 61-62

*Atchison, T. & S.F.R. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 51

*Automobile Club of Mich. v. Commissioner,* 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*BellSouth Corp. v. F.C.C.*, 162 F.3d 1215 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . 45

*Bowman Transp. Inc. v. Arkansas-Best Freight System*, 419 U.S.281 95 S.Ct. 438, 42 L Ed. 2d 447 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

* Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) . . . . . . . . . . . . . . . . . . . . 26-27, 33

*Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62-64

*Council of the S. Mountains, Inc. v. Donovan*, 653 F.2d 573 (D.C.Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Farmers Union Cent. Exch., Inc. v. F.E.R.C.*, 734 F.2d 1486 (D.C. Cir. 1984) . . 46

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46-47

*Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 102 S.Ct. 38 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 113 S. Ct. 2151, 124 L. Ed. 2d 368 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35-36

*Griggs v. Allegheny Cty., Pa.*, 369 U.S. 84, 82 S. Ct. 531, 7 L. Ed. 2d 585 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

*Huerta v. Pirker*, NTSB Docket No. CP-217 (2014) . . . . . . . . . . . . . . . . . . . . . . 34

*INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

\* *Jifry v. FAA,* 370 F.3d 1174 (D.C.Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 59-60

\* *Lorillard v. Pons*, 434 U.S. 575, 98 S. Ct. 866, 55 L. Ed. 2d 40        (U.S. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Mack Trucks, Inc. v. E.P.A.*, 682 F.3d 87 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . 59

*Mid–Tex Elec. Coop. v. FERC,* 822 F.2d 1123 (D.C.Cir.1987) . . . . . . . . . . . . . .59

*Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) . . . . . . 62-63

\* *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) . . . . . . . . . . 36, 44-45, 49, 55

*Nat'l Ass'n of Home Builders v. E.P.A.*, 682 F.3d 1032 (D.C. Cir. 2012) . . . . . . . 47

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*The Paralyzed Veterans of Am. v. C.A.B.*, 752 F.2d 694 (D.C. Cir. 1985), *rev'd sub nom. U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 106 S. Ct. 2705, 91 L. Ed. 2d 494 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 66-67

*Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 191 L. Ed. 2d 186   (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62-63

x

*Petroleum Communications, Inc. v. FCC,* 22 F.3d 1164 (D.C.Cir.1994) . . . . . . . 45

*In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig.,* 709 F.3d 1 (D.C.Cir.2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

\* *Safe Extensions, Inc. v. F.A.A.*, 509 F.3d 593 (D.C. Cir. 2007) . . . . . . . 65-66, 69-70

*SEC v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) . 45, 55

*Smiley v. Citibank (South Dakota), N. A.,* 517 U.S. 735, 116 S. Ct. 1730, 135 L.Ed.2d 25 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

\* *Sorenson Commc'ns Inc. v. F.C.C.*, 755 F.3d 702 (D.C. Cir. 2014) . . . . . . . . 58-60

*State of N. J., Dep't of Envtl. Prot. v. U.S. Envtl. Prot. Agency*, 626 F.2d 1038 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

*Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) . . . . . . . 56

\* *United States v. Causby*, 328 U.S. 256, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946) . . 42

*United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954) . . . . 51

*U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 106 S. Ct. 2705, 91 L. Ed. 2d 494 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66-67

*U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207 (5th Cir. 1979) . . . . . . . . . . . . . . .59

*Watt v. Alaska,* 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) . . . . . . . . . 36

## **Statutes:**

Air commerce Act of 1926, 69th Cong. Sess. I, Ch.344, 44 Stat. 568 . . . . . . . 11-12

Pub. L. No.103-272, §40102(a)(6), 108 Stat. 745 (July 5, 1994) . . . . . . . . . . . . 12

Pub. L. No. 112-95, 126 Stat. 11 . . . . . . iv, vi, 3, 7, 16-17, 28-30, 33, 37-38, 48, 53

xi

Pub. L. No. 112-95, §332, 126 Stat. 11 . . . . . . . . . . . . . . . . . . . . . . . . 7, 17, 37, 38

Pub. L. No. 112-95, §333, 126 Stat. 11 . . . . . . . . . . . . . . . . . . . . . . . . 7, 17, 38, 50

Pub. L. No. 112-95, §334, 126 Stat. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

* Pub. L. No. 112-95, §336, 126 Stat. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . iv, v, vi, 3, 7, 17-19, 21, 26-28, 30-32, 38-39, 43, 48, 71

5 U.S.C.  500, et seq. (Administrative Procedures Act). . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .vii, 3, 8, 9, 46, 57, 63, 68, 70

* 5 U.S.C. § 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 31, 57, 64, 68

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 57, 44, 51, 53, 57

49 U.S.C. § 40102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16, 34-35, 38

49 U.S.C. § 40103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41-43

49 U.S.C. § 44101 . . . . . . . . . . . . . . . . . . .vi, 23, 29, 32-33, 39-40, 44, 50, 58, 64

49 U.S.C. § 44103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

49 U.S.C. §46110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 64

## Regulations:

Part 47 of Title 14 of the C.F.R. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . v, viii, 3, 5-6, 23-24, 27-32, 36-37, 40, 50, 53, 57-58, 62-63

14 C.F.R. § 47.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 64-65

Part 48 of Title 14 of the C.F.R. . . . . . . . . . . . . . . v, 3, 5, 24, 27-30, 39, 49-50, 57

14 C.F.R. § 48.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49-50

14 C.F.R. § 48.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

14 C.F.R. § 48.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

14 C.F.R. §48.25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

14 C.F.R. § 48.115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

14 C.F.R. § 91.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

14 C.F.R. § 91.119 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 48

14 C.F.R. § 91.203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

14 C.F.R. § 93.331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 54

14 C.F.R. § 93.335 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x, 20, 25

14 C.F.R. § 93.339 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

14 C.F.R. § 93.341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

14 C.F.R. § 103.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

14 C.F.R. § 103.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

AC91-57 . . . . . . . . . . . . . . . . . . . . . . . . . iii, 5, 12-14, 21-22, 29, 33, 42, 48, 63

Washington, DC Metropolitan Area Special Flight Rules Area, 73 Fed. Reg. at
    76197 (Dec. 16, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 41, 54

Interpretation of the Special Rule for Model Aircraft, 79 Fed. Reg. 36172 (June 25,
    2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 47-48

Revision of Advisory Circular 91-57 Model Aircraft Operating Standards, 80 Fed.
    Reg. 54367 (Sept. 9, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . iii, 5, 21, 68

xiii

AC91-57A . . . . . . . . . . . . . iii-viii, 3, 5, 20-22, 25-26, 32, 41-43, 48, 53-56, 67-70

Clarification of the Applicability of Aircraft Registration Requirements for
    Unmanned Aircraft Systems (UAS) and Request for Information Regarding
    Electronic Registration for UAS, 80 Fed. Reg. 63912 (Oct. 22, 2015)
    ("Clarification and Request for Information") . . . . . . . . . . . . . . . . . . . . . . . . .
    . . . . . . . . . . . . . . . . . . . iii, viii, 3, 5-6, 23-24, 30-33, 35, 40, 53, 63, 65-66

Registration and Marking Requirements for Small Unmanned Aircraft, 80 Fed.
    Reg. 78593 (Dec.16, 2015) ("The Interim Final Rule") . . . . . . . . . . . . . . . .
    . . . . . . . . . . . . . ii, 3, 5-8, 24-33, 35, 38-40, 44, 47, 49-50, 52-53, 57-63, 65

## **Rules:**

D.C. Cir. Rule 28(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Fed. R. App. P. 28(a)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. App. P. 32(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Fed. R. App. P. 32(a)(7)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Fed. R. App. P. 32(a)(7)(B)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

* Authorities upon which we chiefly rely are marked with asterisks.

## GLOSSARY OF ABBREVIATIONS

DC-FRZ      The Washington, DC Metropolitan Area Flight Restricted Zone. *See* 14 C.F.R. § 93.335.

DC-SFRA     The Washington, DC Metropolitan Area Special Flight Rules Area. *See* 14 C.F.R. § 93.335.

EX          Petitioner's Addendum of Exhibits

FAA         The Federal Aviation Administration.

JA          Joint Appendix

## <u>PETITIONER'S JURISDICTIONAL STATEMENT</u>

The matters before the Court are three consolidated reviews of three separate final orders of the FAA.

This Court has jurisdiction pursuant to 49 U.S.C. § 46110(a).

Petitioner is a recreational model aircraft hobbyist who is directly adversely affected by the orders that are the subject of review in that they require his registration and compliance with other duties created by the orders and they restrict his engagement in his hobby. *See* Petitioner's Addendum Regarding Standing.

In Case No. 15-1495, the order was issued December 16, 2015 and the Petition was filed on December 24, 2015. In Case Nos. 16-1008 and 16-1011, the Petitions were not filed within 60 days of issuance of the orders, but with reasonable grounds for delay. The timeliness of those Petitions is addressed in § VI of the Arguments portion of this brief, pursuant to the Court's order of May 5, 2016.

1

## <u>PETITONER'S STATEMENT OF THE STANDARD OF REVIEW</u>

The Court's standard of review regarding each issue is set forth within the

Argument section, pursuant to Fed. R. App. P. 28(a)(8)(B).

## PETITIONER'S STATEMENT OF THE ISSUES

1. Whether the following actions by the FAA violated the prohibition on rules and regulations regarding model aircraft in § 336(a) of Pub. L. 112-95:

   a. The establishment of a registry for recreational model aircraft under Part 48 of Title 14 of the C.F.R., contained in the Interim Final Rule.

   b. The extension of registration under Part 47 of Title 14 of the C.F.R. to recreational model aircraft contained in the Interim Final Rule and the Clarification and Request for Information.

   c. The extension of the application of laws regarding "aircraft" to recreational model aircraft contained in the Interim Final Rule and the Clarification and Request for Information.

   d. The application of the DC-SFRA to recreational model aircraft contained in AC91-57A, creating a "no fly zone" for model aircraft.

2. Whether the aforesaid actions by the FAA were statutorily and constitutionally authorized.

3. Whether the aforesaid actions by the FAA were arbitrary and capricious.

4. Whether the aforesaid actions by the FAA complied with the notice and comment requirements of the Administrative Procedure Act, and whether the FAA had good cause to dispense with those requirements.

## **STATUTES AND REGULATIONS**

Cited statutes and regulations are contained in a separate addendum.

## PETITIONER'S STATEMENT OF THE CASE

**Case No. 15-1495:**  On December 16, 2015, the FAA issued Registration and Marking Requirements for Small Unmanned Aircraft, 80 Fed. Reg. 78593 (Dec.16, 2015) ("the Interim Final Rule") (JA9-64), without notice and comment, establishing a registry regarding recreational model aircraft under Part 48 of Title 14 of the C.F.R., and declaring that it was an "alternative" to registration under Part 47 of Title 14 of the C.F.R.  Petitioner filed his Petition for Review on December 24, 2015.

**Case No. 16-1008:**  On September 9, 2015, the FAA issued Revision of Advisory Circular 91-57 Model Aircraft Operating Standards, 80 Fed. Reg. 54367 (Sept. 9, 2015). JA2. Though not included or linked in the Federal Register notice, the document referenced therein was an FAA advisory circular identified as AC91-57A. JA3-5. AC91-57A included a statement that model aircraft must not operate in the DC Special Flight Rules Area ("DC-SFRA"), *i.e.*, 30 miles from Reagan National Airport. Petitioner filed his Petition for Review on January 12, 2016.

**Case No. 16-1011:**  The Interim Final Rule, addressed in Case No. 15-1495, was preceded by a Clarification of the Applicability of Aircraft Registration Requirements for Unmanned Aircraft Systems (UAS) and Request for Information

5

Regarding Electronic Registration for UAS, 80 Fed. Reg. 63912 (Oct. 22, 2015)

("Clarification and Request for Information"). JA6-8. That publication set up a

"task force" to determine the best approach to recreational model aircraft

registration. In doing so, it made passing reference to a previously non-existent

requirement for registration of recreational model aircraft under Part 47 of Title 14

of the C.F.R. At the same time, it dismissed such registration process as being "…

too burdensome for small UAS, to include model aircraft." Clarification and

Request for Information, 80 Fed. Reg. at 63914. While this action by the FAA

lacked finality and was ultimately finalized in the Interim Final Rule, Petitioner

filed a Petition for Review, in an abundance of caution, on January 15, 2016.

6

## **PETITIONER'S SUMMARY OF ARGUMENT**

For over a century, the FAA and its predecessors recognized recreational model aircraft as something entirely separate and apart from civil aircraft. The FAA realized it had no authority over these toys and encouraged only "voluntary compliance" with safety guidelines that largely sought to keep recreational model aircraft out of the navigable airspace properly controlled by the FAA.

The FAA's distinction between civil aircraft and recreational model aircraft was adopted and codified by Congress in 2012. Pub. L. 112-95 mandated FAA control over some small unmanned devices that were being operated commercially (which the FAA had categorized as "civil aircraft" since 2007) in §§ 332-33, while prohibiting FAA regulation of model aircraft that were operated recreationally and met certain safety-related criteria in § 336(a).

Despite this clear statutory prohibition, on December 16, 2015 the FAA issued the Interim Final Rule, requiring the registration of all but a few types of recreational model aircraft.

In addition to being a violation of the statute, the creation of the registry otherwise lacked statutory authority. The FAA acted under the specious theory that recreational model aircraft had suddenly become "aircraft" and must be registered under a previously unused statutory mandate dating back to 1926. The FAA's

7

broad new interpretation of the definition of "aircraft" would similarly make Frisbees, paper airplanes, and other small flying toys subject to the myriad statutes and regulations applicable to "aircraft." Further, the FAA created an unauthorized registry, not truly of devices, but of people, and mandated, without authority, that owners commit to specific intended flying practices as a condition of registration.

In a reactionary rush to do something, however ineffectual, in response to unreasonable fears of "drones," the FAA not only violated statutory prohibitions and bypassed the Administrative Procedure Act, but shoe-horned all flying toys into the body of aviation regulation in a manner that renders the regulation, and the process it creates, arbitrary and capricious. The FAA applies a body of law, designed for real aircraft, to toys, in a way that results in an absurd regulatory scheme that defies compliance.

In adopting the Interim Final Rule, the FAA failed to follow the notice and comment requirements of the Administrative Procedure Act. The FAA claimed it had "good cause" to ignore these requirements, under the theory that it would be impracticable and contrary to public interest to do so. However, there was no impracticality, nor imminent threat to life or property, to justify bypassing that statutory requirement, and any timing concerns were of the FAA's making.

8

Within days of Petitioner's filing of Case No. 15-1495, the FAA declared the entire Washington, D.C. metropolitan area, and beyond, to be a "no drone zone" - suddenly applying a 2008 regulation intended to ensure communication with aircraft and facilitate protection against an aircraft attack on the nation's capital.

In doing so the FAA again: 1) violated § 336(a); 2) prohibited activity outside of its statutory authority; 3) acted arbitrarily and capriciously; and 4) violated the notice and comment requirements of the Administrative Procedure Act.

9

## **PETITIONER'S STATEMENT REGARDING STANDING**

Petitioner is a recreational model aircraft hobbyist who directly suffers adverse consequences by virtue of the orders subject to review.

The orders: 1) require Petitioner to register in a federal database prior to flying his model aircraft; 2) require Petitioner to comply with various statutes and regulations regarding "aircraft"; and 3) prohibit Petitioner's operation of recreational model aircraft the area surrounding his home. *See also* Petitioner's Addendum Regarding Standing.

10

# ARGUMENT

## I.    Historical Background: the FAA's Treatment of Recreational Model Aircraft:

Because these matters arise from over a century of federal legislative, regulatory and interpretive action, an understanding of the regulatory history is critical.

For the first century of American aviation and beyond, the federal government made no attempt whatsoever to regulate recreational model aircraft.

Recreational model aircraft were treated as toys, and appropriately so, rather than as a type of "aircraft" subject to the authority of the FAA and its predecessors.

Aircraft have been subject to federal registration, by statute, since 1926. However, the FAA did not seek to register recreational model aircraft until the orders that are the subject of these Petitions.

Those actions by the FAA came years after a 2012 statute that specifically prohibited the FAA's regulation of recreational model aircraft.


**1926:**
**The Air Commerce Act of 1926:**

In 1926, Congress passed the Air commerce Act of 1926, 69th Cong. Sess. I, Ch.344, 44 Stat. 568.

§ 3(a) of the Air Commerce Act of 1926 provides for the registration of aircraft. *Id.*, 44 Stat. at 569. Prior to that, there was no federal process for the registration of American aircraft.

§ 9(c) of that Act defines "aircraft" to mean "…any contrivance now known or hereafter invented, used, or designed for navigation of or flight in the air, except a parachute or other contrivance designed for such navigation but used primarily as safety equipment."[1] *Id.*, 44 Stat. at 573.

As suggested by its name, the goals and functions of the Air Commerce Act of 1926 focused on interstate and foreign air commerce. The Act did not address model aircraft.


**1981:**
**AC91-57:**

For more than 50 years following the enactment of the Air Commerce Act of 1926, the federal government remained silent on the issue of model aircraft.

_____

[1] In 1994, following other amendments, the statutory definition of "aircraft" was modified to be, "…any contrivance invented, used, or designed to navigate, or fly in, the air." Pub.L. No.103-272, §40102(a)(6), 108 Stat. 745 (July 5, 1994).

Model aircraft were not subject to registration or any other regulation applicable to

"aircraft."

  In 1981, the FAA issued an advisory circular regarding model aircraft.

AC91-57 - Model Aircraft Operating Standards (June 9, 1981). JA1. AC91-57 was

the FAA's first formal treatment of model aircraft. As the FAA has acknowledged,

> Until 1981, there were no federal guidelines or directives for model
> aircraft operations.  In June of that year, the FAA published an
> Advisory Circular (AC 91-57) titled 'Model Aircraft Operating
> Standards.' Although not directive in nature, AC 91-57 provided
> general guidance for the operation of model aircraft.[2]

  In AC91-57, the FAA still made no claim of, nor attempt to exercise,

regulatory authority over the hobby, its participants or equipment - as "aircraft" or

otherwise. AC91-57 contained neither mandates nor prohibitions. Rather, it

"…outlines, and encourages ***voluntary compliance*** with, safety standards for

model aircraft operators." [emphasis supplied]

---

[2] Memorandum of Understanding between Academy of Model Aeronautics and
Federal Aviation Administration Concerning Operation of Model Aircraft In the
National Airspace System, executed January 11, 2014. EX23.

13

**2001:**
**FAA Memoranda**

On August 28, 2001, an FAA Air Traffic Division Manager sought guidance

for procedures regarding the flight of radio controlled blimps and other devices.

EX1-4.

The FAA's Program Director for Air Traffic Planning and Procedures in the

Washington D.C. office provided a response, consistent with the position the FAA

had always taken – that model aircraft are not subject to FAA regulation:

> Model aircraft do not require a type certificate, airworthiness
> certificate, or registration. ***Federal Aviation regulations do not apply
> to them***.
> * * *
> Model aircraft operators should comply with Advisory Circular 91-57,
> Model Aircraft Operating Standards, and avoid flying within 3 miles
> of an airport or in proximity of full-scale aircraft. [emphasis supplied]

*Id.*, at 4.


**2007 – 2011:**
**Notice No. 07-1, *et al.*:**

In AC91-57, and in the 2001 memoranda, the FAA did not distinguish

between model aircraft being flown recreationally and those that were flown

commercially. It claimed authority over neither. In fact, the devices that were the

subject of the 2001 memoranda were to be used commercially.

14

However, starting in 2007, the FAA issued various statements of opinion, purporting to draw a new clear regulatory distinction between model aircraft used for commercial purposes, and those used recreationally.[3]

The FAA's new position was that recreational model aircraft remained solely governed by AC91-57. However, similar devices flown for commercial purposes were now required to have airworthiness certificates and otherwise be subject to FAA regulation.

In furtherance of this new regulatory dichotomy, the FAA drew a distinction between: 1) commercial "unmanned aircraft systems" ("UAS"), which it characterized as "civil aircraft;" and 2) recreational model aircraft.

> The current FAA policy for UAS operations is that no person may operate a UAS in the National Airspace System without specific authority. For UAS operating as public aircraft[4] the authority is the COA, for UAS operating as civil aircraft the authority is special airworthiness certificates, and for model aircraft the authority is AC 91–57.

---

[3] *E.g.,* Unmanned Aircraft Operations in the National Airspace System, 72 Fed. Reg. 6689, 6690 (Feb. 13, 2007); ORDER 8130.34, Airworthiness Certification of Unmanned Aircraft Systems (March 27, 2008). (EX31 (excerpt)); Interim Operational Approval Guidance 08-01 (2008) (§ 4, p.5) (EX39-40 (excerpt)); ORDER 8130.34B, Airworthiness Certification of Unmanned Aircraft Systems and Optionally Piloted Aircraft (Nov. 28, 2011) (EX41).

[4] *I.e.*, aircraft owned by the government. 49 U.S.C. § 40102(a)(41).

15

Unmanned Aircraft Operations in the National Airspace System, 72 Fed. Reg. 6689, 6690 (Feb. 13, 2007).

The distinction the FAA drew between "civil aircraft" (which it applied only to devices being flown commercially) and recreational "model aircraft" is wholly inconsistent with the notion that recreational model aircraft are "aircraft" under the law. 49 U.S.C. § 40102(a)(16) provides that, "'civil aircraft' means an aircraft except a public aircraft." If recreational model aircraft are not "public aircraft," and they are not "civil aircraft," then they are not aircraft at all.[5]

The FAA repeated the distinction between civil aircraft and model aircraft in 2014 and 2015 (after the enactment of Pub. L. 112-95),[6] and maintains the distinction on its website to this day. *See* EX5-8.

_____

[5] Like the FAA's 2007 policy statement, Pub. L. 112-95, discussed *infra*, draws a clear distinction between unmanned devices used as "civil aircraft," which must be registered (§ 332(a)(2)(A)(iii)), and recreational model aircraft which are protected from FAA regulation (§ 336).

[6] FAA Order JO 7210.873 (July 11, 2014) (§ 7(a), p. 3). EX48 (excerpt); FAA Order JO 7210.882 (July 11, 2015) (§ 7(a), p. 3). EX51 (excerpt); FAA Order JO 7210.891 (Nov. 25, 2015) (§ 8(b), (c), p. 2-3) EX53-54 (excerpt).

16

**2012:**
**Pub. L. 112-95:**

For more than 30 years after the issuance of AC91-57, recreational model aircraft hobbyists continued to operate in "voluntary compliance" with the safety standards of that advisory circular, with no attempt by the FAA to claim regulatory authority.

In 2012 Congress enacted the FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95, 126 Stat. 11 ("Pub. L. 112-95").

In § 336 of the Pub. L. 112-95, Congress codified the FAA's longstanding treatment of recreational model aircraft. Through § 336, Congress carved out and protected recreational model aircraft from any regulatory authority the FAA might claim over these toys as "aircraft."

While § 332 and § 333 established FAA authority over devices used commercially as "civil aircraft," § 336(a) specifically prohibited the FAA from adopting rules or regulations regarding recreational model aircraft that meet certain basic size and operational criteria.

Recognizing even toys can be dangerous when abused, Congress reiterated the FAA's authority, where applicable, "… to pursue enforcement action against persons operating recreational model aircraft who endanger the safety of the national airspace system." § 336(b).

17

## SEC. 336. SPECIAL RULE FOR MODEL AIRCRAFT.

(a) IN GENERAL.—Notwithstanding any other provision of law relating to the incorporation of unmanned aircraft systems into Federal Aviation Administration plans and policies, including this subtitle, the Administrator of the Federal Aviation Administration may not promulgate any rule or regulation regarding a model aircraft, or an aircraft being developed as a model aircraft, if—

> (1) the aircraft is flown strictly for hobby or recreational use;

> (2) the aircraft is operated in accordance with a community based set of safety guidelines and within the programming of a nationwide community-based organization;

> (3) the aircraft is limited to not more than 55 pounds unless otherwise certified through a design, construction, inspection, flight test, and operational safety program administered by a community-based organization;

> (4) the aircraft is operated in a manner that does not interfere with and gives way to any manned aircraft; and

> (5) when flown within 5 miles of an airport, the operator of the aircraft provides the airport operator and the airport air traffic control tower (when an air traffic facility is located at the airport) with prior notice of the operation (model aircraft operators flying from a permanent location within 5 miles of an airport should establish a mutually-agreed upon operating procedure with the airport operator and the airport air traffic control tower (when an air traffic facility is located at the airport)).

(b) STATUTORY CONSTRUCTION.—Nothing in this section shall be construed to limit the authority of the Administrator to pursue enforcement action against persons operating model aircraft who endanger the safety of the national airspace system.

(c) MODEL AIRCRAFT DEFINED.—In this section, the term ''model aircraft'' means an unmanned aircraft that is—

    (1) capable of sustained flight in the atmosphere;

    (2) flown within visual line of sight of the person operating the aircraft; and

    (3) flown for hobby or recreational purposes.

**2014:**
**Interpretation of the Special Rule:**

On June 25, 2014, in response to § 336 of Pub. L. 112-95, the FAA issued its Interpretation of the Special Rule for Model Aircraft, 79 Fed. Reg. 36172 (June 25, 2014).

In that document, and despite the voluminous and universally-consistent evidence to the contrary, the FAA alleged that,

Historically, the FAA has considered model aircraft to be aircraft that fall within the statutory and regulatory definitions of an aircraft, as they are contrivances or devices that are "invented, used, or designed to navigate, or fly in, the air."

Having made that patently-false assertion, the FAA still claimed no entitlement to register model aircraft, or otherwise actually bring them under the body of law applicable to "aircraft."

The Interpretation of the Special Rule provides specific "Examples of Regulations That Apply to Model Aircraft." *Id.* at 36175. Registration, which would certainly be a significant regulation if applicable, was conspicuously not mentioned.

The FAA stated, "if a model aircraft is operated consistently with the terms of section 336(a) and (c), then it would not be subject to future FAA regulations regarding model aircraft." *Id.* at 36175.

**2015:**
**AC91-57A:**

The "Washington, DC Metropolitan Area Special Flight Rules Area" ("DC-SFRA") is the area occupying a circle with a 30 mile radius extending from the tower at Washington Reagan National Airport ("DCA"). 14 C.F.R. § 93.335. It includes the "Washington, DC Metropolitan Area Flight Restricted Zone" ("DC-FRZ"), which is an area roughly approximating a circle with a 15 nautical mile radius extending from DCA. *Id.*

Pilots are prohibited by regulation from operating civil aircraft in the DC-SFRA unless the aircraft is equipped with various communications and identification equipment, and the pilot follows specific communications protocols. 14 C.F.R. § 93.339(a).

20

Pilots are generally prohibited by regulation from operating civil aircraft in the DC-FRZ, "unless the specific flight is operating under an FAA/TSA authorization." 14 C.F.R. § 93.341(a).

The rationale behind the DC-FRZ and the DC-SFRA and associated rules is set forth in 14 C.F.R. § 93.331, which provides:

> Because identification and control of aircraft is required for reasons of national security, the areas described in this subpart constitute national defense airspace. The purpose of establishing this area is to facilitate the tracking of, and communication with, aircraft to deter persons who would use an aircraft as a weapon, or as a means of delivering weapons, to conduct an attack on persons, property, or buildings in the area. This subpart applies to pilots conducting any type of flight operations in the airspace designated as the Washington, DC Metropolitan Area Special Flight Rules Area (DC SFRA) (as defined in §93.335), which includes the airspace designated as the Washington, DC Metropolitan Area Flight Restricted Zone (DC FRZ) (as defined in §93.335).

14 C.F.R. § 93.331. *See also* Washington, DC Metropolitan Area Special Flight Rules Area, 73 Fed. Reg. 76195 (Dec. 16, 2008).

On September 9, 2015, and in further response to § 336 of Pub. L. 112-95, the FAA issued an updated version of AC91-57, entitled AC91-57A. JA3-5.[7]

_____

[7] AC91-57A - Model Aircraft Operating Standards (*See Revision of Advisory Circular 91-57 Model Aircraft Operating Standards, 80 Fed. Reg. 54367 (Sept. 9, 2015).* AC91-57A was subsequently revised on September 10, 2015 without substantive change. Advisory Circular 91–57 Model Aircraft Operating Standards, 80 Fed. Reg. 54417 (Sept. 10, 2015).

Like AC91-57 before it, AC91-57A was an advisory circular, not a regulation or formal rule. Nonetheless, the "voluntary compliance" language of AC91-57 disappeared from this new version.  It included, among myriad provisions, the following prohibitions:

> Model aircraft must not operate in Prohibited Areas, Special Flight Rule Areas [("DC-SFRA")]or, the Washington National Capital Region Flight Restricted Zone [("DC-FRZ"), without specific authorization.

The D.C. Special Flight Rules area (DC-SFRA) had been in effect, in one form or another, since 2003,[8] but had not previously been applied to recreational model aircraft. AC91-57A was issued without notice and comment.

The prohibitions of AC91-57A apply to all model aircraft, regardless of size. Its prohibitions also contained no altitude limitations or other connection to navigable airspace or air commerce. They apply to a child playing with a small flying toy a few feet off the ground in the family's back yard.

---

[8] *See* Washington, DC Metropolitan Area Special Flight Rules Area, 73 Fed. Reg. at 76197.

22

**2015:**
**Clarification and Request for Information:**

On October 22, 2015 the FAA issued Clarification of the Applicability of Aircraft Registration Requirements for Unmanned Aircraft Systems (UAS) and Request for Information Regarding Electronic Registration for UAS, 80 Fed. Reg. 63912 (Oct. 22, 2015) ("Clarification and Request for Information"). JA6-8.

The function of the Clarification and Request for Information was to review the status of registration requirements for recreational model aircraft, and to announce the formation of a task force to explore and develop recommendations to create a streamlined registration process.

The Clarification and Request for Information falsely suggested registration of recreational model aircraft had always been required under the decades-old paper process for registering full-sized manned aircraft, pursuant to 49 U.S.C. § 44101(a) and Part 47 of Title 14 of the C.F.R. ("Part 47" registration). *See* Clarification and Request for Information, 80 Fed. Reg. at 63913.

In truth, the FAA had *never* before taken the position that registration of recreational model aircraft was required under 49 U.S.C. § 44101(a) or 14 C.F.R § 47.3(b).

23

Indeed, the Clarification and Request for Information itself did not direct recreational model aircraft to register under Part 47, stating, "… it is apparent that the current paper-based system for aircraft registration is too burdensome for small UAS, to include model aircraft." *Id.* at 63914.

**2015:**
**The Interim Final Rule:**

On December 16, 2015, the FAA issued Registration and Marking Requirements for Small Unmanned Aircraft, 80 Fed. Reg. 78593 (Dec.16, 2015) (the "Interim Final Rule"). JA9-64.

The function of the Interim Final Rule was to create a new mandatory online registration process for most types of recreational model aircraft.  If an owner/operator does not comply, the FAA threatens to "… assess civil penalties up to $27,500. Criminal penalties include fines of up to $250,000 and/or imprisonment for up to three years." (FAA FAQ no.7, EX9-10).

The new registration process is governed by a new Part 48 of Title 14 of the C.F.R., created by this new regulation ("Part 48" registration).

The FAA adopted the Interim Final Rule on December 16, 2015, without notice and comment, making it effective five days later on December 21, 2015. The FAA contended it had "good cause," pursuant to pursuant to  5 U.S.C. §

24

553(b)(3)(B)), to forego notice and comment. Interim Final Rule, 80 Fed. Reg. at

78642.


**2015 - 2016:**
**<u>Model Aircraft use Prohibited in the DC-SFRA</u>**

Shortly after the effective date of the Interim Final Rule and within a few

days after Petitioner filed his Petition in Case No. 15-1495, the FAA embarked on

a public relations campaign to notify the media and public it was extending a "No

Drone Zone" around Washington, D.C. to 30 miles from Washington Reagan

National Airport, which includes the area where Petitioner resides. *See* EX11-17.

Local model aircraft clubs were told they would have to shut down operations –

enforcing prohibitions on model aircraft operations within the DC-SFRA claimed

by the FAA under AC91-57A and the years-old 14 C.F.R. § 93.335.

Previously, and despite 14 C.F.R. § 93.335, the FAA contended that only a

15 nautical mile restriction applied. *See* EX18.

The FAA provided no reason for this sudden and coincidental action.  Model

aircraft clubs based within the DC-SFRA had previously been allowed to continue

in operation.

As abruptly as the FAA prohibited recreational model aircraft within the

DC-SFRA, the FAA unceremoniously reversed itself again (subject to certain

25

caveats) by issuance of a Notice to Airmen ("NOTAM"), NOTAM 2/2069 in February, 2016. EX55. AC91-57A, however, was not rescinded or modified in terms of its absolute flight prohibitions – leaving a conflict between its directives and the subsequent NOTAM.[9]

## II.     The Orders Violate § 336(a) of Pub. L. 112-95:

### A.     The Interim Final Rule Violates § 336(a) by Promulgating a Rule or Regulation Regarding Model Aircraft:

#### 1.    Standard of Review:

The FAA's Interim Final Rule is a direct and blatant violation of § 336(a) of Pub. L. 112-95. It is a regulation regarding recreational model aircraft, which is specifically prohibited under that statute.

The Interim Final Rule should be reversed applying the first prong of *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82, 81 L. Ed. 2d 694 (1984).

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter;

---

[9] The FAA's website and safety app continue to show that "...flying in the Special Flight Rules Area around Washington, D.C. is prohibited." *See*  EX21.

for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id*.

### 2.  **Part 48 is a New Regulation in Violation of § 336(a):**

In this case, Congress has directly spoken to the precise question at issue.

§ 336(a) of Pub. L. 112-95 specifically prohibits the FAA from promulgating rules or regulations regarding recreational model aircraft, if those recreational model aircraft meet specified size and safety-related criteria.

The Interim Final Rule creates an entirely new Part 48 of Title 14 of the Code of Federal Regulations ("Part 48"), establishing a mandatory database for virtually all recreational model aircraft and their operators, in direct contravention of § 336(a) of Pub. L. 112-95.

### 3.  **The Application of Part 47 is Itself a New Rule in Violation of § 336(a), and Does not Justify the Creation of a New Part 48 in any Event:**

The FAA has attempted to evade the clear statutory prohibition of § 336(a) by claiming that registration of recreational model aircraft is not a new rule or regulation at all.  The FAA claims such a rule was already in place, and predated

27

Pub. L. 112-95, in the form of registration under Part 47 of Title 14 of the Code of Federal Regulations.  The new Part 48 registration was, the FAA says, merely an "…alternative, streamlined and simple…" version of the existing Part 47 registration.  Interim Final Rule, 80 Fed. Reg. at 78594.

The FAA's contention that Part 47 registration of recreational model aircraft existed prior to Pub. L. 112-95 is both wrong and irrelevant.

Assuming, *arguendo*, Part 47 registration indeed applied to recreational model aircraft prior to Pub. L. 112-95, the Interim Final Rule's creation, by regulation, of an entirely new part of a C.F.R. title and process nonetheless constituted the unlawful promulgation of a rule or regulation.

The FAA seems to think that there is an unwritten exception to § 336(a) for rules and regulations that the FAA believes are relatively innocuous and arguably beneficial.  There is no such exception. Whatever authority may have existed under prior law, § 336(a) prohibited new rules and regulations.

However, even the premise of the FAA's argument is incorrect. Part 47 did not apply to recreational model aircraft at the time the Interim Final Rule was adopted and cannot be the basis for a claim of pre-ban authority. Like the clearly-new Part 48 registration process, any new post-Pub. L. 112-95 requirement for Part

28

47 registration of recreational model aircraft would similarly be a prohibited new rule.

As set forth in the history above, at the time the Pub. L. 112-95 was enacted the FAA claimed no regulatory authority whatsoever over recreational model aircraft, including registration under Part 47 or 49 U.S.C. § 44101(a).  Instead, the FAA sought only to encourage "voluntary compliance" by model aircraft operators with "safety standards" under AC91-57.

In that context, the only plausible congressional intent to infer from § 336 is that Congress sought to preserve that *status quo* of non-regulation – which distinguished recreational model aircraft from civil aircraft.  That applies to newly-drafted regulations like Part 48, and applies as well to new rules like the sudden, if only theoretical, application of Part 47 registration to recreational model aircraft.

Congress enacted Pub. L. 112-95 in the context of the FAA's policies and interpretations in effect at that time.  To say that Part 47 registration of recreational model aircraft predated Pub. L. 112-95 would ignore not only the clear congressional intent of § 336(a), but also the FAA's consistent interpretations over many decades.

> Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change. *[citations omitted]* So too, where, as here, Congress adopts a new law incorporating sections of a prior law,

29

> Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.

*Lorillard v. Pons*, 434 U.S. 575, 580-81, 98 S. Ct. 866, 870, 55 L. Ed. 2d 40 (U.S. 1978). Applying the principles of *Lorilland*, Congress is presumed to have known the FAA claimed no authority to regulate recreational model aircraft. Indeed, the whole point of § 336(a) was to codify that status.

The issue of Part 47 registration has been used by the FAA as a mere device in an attempt to bootstrap its way into Part 48 registration by disingenuously claiming the existence of pre-Pub. L. 112-95 registration. However, as quickly as the FAA cited Part 47 registration as an authority, it disavowed it as being, "… too burdensome for small UAS, to include model aircraft," Clarification and Request for Information, 80 Fed. Reg. at 63914, and "…too onerous for small unmanned aircraft owners and the FAA." Interim Final Rule, 80 Fed. Reg. at 78595. Indeed, the Interim Final Rule cites the impracticality of applying Part 47 registration as part of its rationale for claiming good cause to ignore the notice and comment requirements of 5 U.S.C. § 553(b) and (c). *See* Interim Final Rule, 80 Fed. Reg. at 78598-99.

### 4. **The Requirement of Oaths Prior to Registration Violates § 336(a):**

The FAA's violations of § 336(a) do not stop at mere registration. The FAA has gone well beyond simply registering model aircraft. As part of what is ostensibly merely a registration process created by the Interim Final Rule, the FAA uses that mandatory undertaking as leverage to extract oaths from applicants regarding their future flying practices. *See* EX19. While the imposition of a registration requirement is misguided and unlawful, the oath requirement, unique to recreational model aircraft, is wholly indefensible under § 336(a). It goes well beyond mere registration of a device and is not required of applicants for registration of real aircraft.

### B. **The Clarification and Request for Information Violates § 336(a):**

The Clarification and Request for Information was merely an inchoate precursor to the Interim Final Rule. Petitioner filed a Petition for Review regarding the Clarification and Request for Information in an abundance of caution because of the FAA's brief reference to Part 47 registration as being applicable to recreational model aircraft.

31

This was the first instance where the FAA claimed Part 47 registration applied to recreational model aircraft as "aircraft," pursuant to 49 U.S.C. § 44101(a). *See* Clarification and Request for Information, 80 Fed. Reg. at 63914.

Petitioner's arguments regarding Part 47 registration, and the application of "aircraft" regulation generally, are the same for the Interim Final Rule and the Clarification and Request for Information.

### C.    **AC91-57A Violates § 336(a):**

AC91-57A applied the long-standing 30 mile DC-SFRA for aircraft to model aircraft to create a new "no fly zone" for model aircraft. As such, it is a rule or regulation regarding model aircraft in violation of the prohibitions of § 336(a) of Pub. L. 112-95.

### III.    **The Orders are Beyond the Scope of the FAA's Statutory Authority:**

### A. **The Interim Final Rule is Beyond the Scope of the FAA's Statutory Authority:**

### 1.  **Standard of Review:**

Assuming, *arguendo*, that the registration and other provisions of the Interim Final Rule were not specifically prohibited by § 336(a) of Pub. L. 112-95, they would be unlawful because they lack statutory authority. 5 U.S.C. § 706(2)(c).

32

Applying the second prong of *Chevron*, the agency's action is not based on a permissible construction of the statute under which it claims authority. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82, 81 L. Ed. 2d 694 (1984).

### 2.  The FAA has Long Acknowledged that Recreational Model Aircraft are Not Under FAA Authority as Aircraft:

The FAA consistently acknowledged it did not have regulatory authority over recreational model aircraft prior to Pub. L. 112-95, and that legislation certainly did not extend the FAA's authority.

The FAA claims that its authority to register recreational model aircraft is based upon its longstanding statutory authority to register "aircraft." *See* Clarification and Request for Information, 80 Fed. Reg. at 63914; Interim Final Rule, 80 Fed. Reg. at 78595; *see also* 49 U.S.C. § 44101(a).  However, as demonstrated by the FAA's consistent treatment, recreational model aircraft are not "aircraft."

Until very recently, the FAA had never claimed recreational model aircraft were aircraft.  The FAA was correct in 1981 when AC91-57 sought only to "encourage voluntary compliance." It was correct again in 2001 when it said of

33

model aircraft that, "Federal Aviation regulations do not apply to them."[10] It was also correct, starting in 2007 through the present, when it repeatedly drew a clear distinction between "civil aircraft" and recreational model aircraft. *E.g.*, Unmanned Aircraft Operations in the National Airspace System, 72 Fed. Reg. 6689, 6690 (Feb. 13, 2007); FAA Order JO 7210.873, 3 (July 11, 2014) (EX46 (excerpt)); FAA Order JO 7210.882, 3 (July 11, 2015) (EX49 (excerpt)); FAA Order JO 7210.891, 2-3 (Nov. 25, 2015) (EX52 (excerpt)); FAA Website. EX5-8.

By its recent declaration that recreational model aircraft are "aircraft," the FAA takes an extremely broad and unprecedented reading of the statutory definition of that term.[11] It suggests the FAA has only just now realized the true

---

[10] *See* EX4.

[11] By statute, an "aircraft" is, "…any contrivance invented, used, or designed to navigate, or fly in, the air." 49 U.S.C. § 40102(a)(6). The statute provides that an aircraft is something that is ultimately "used…to…fly…" and not simply something that flies. The distinction is significant. An aircraft is a tool of manned flight, ***used,*** by a ***person***, to achieve that person's flight.

In *Huerta v. Pirker*, NTSB Docket No. CP-217 (2014), a model aircraft operator was fined for flying commercially, allegedly in violation of regulations applicable to "aircraft." Pirker made an argument similar to Petitioner's regarding the correct interpretation of the term "aircraft" under 49 U.S.C. § 40102(a)(6) as applied to model aircraft. While Pirker won before an ALJ, the decision was reversed on appeal to the NTSB. The case settled while on remand. Petitioner submits that the decisional order of the ALJ is the better-reasoned decision for the reasons stated here.

meaning of the statutory definition of aircraft set forth in 49 U.S.C. § 40102(a)(6), which had previously evaded them these many decades.

The FAA seeks to revise history when it argues its failure to register model aircraft, or otherwise treat them in any manner as "aircraft," in the past was the exercise of an "enforcement discretion." *See* FAA's Opposition to Petitioner's Motion for Summary Disposition, p.6; Clarification and Request for Information, 80 Fed. Reg. at 63913. Registration was specifically identified by the FAA as simply not required as recently as the week the Petition in this case was filed. *See* EX20 (Dated Dec. 16, 2015, retrieved Dec. 22, 2015).

Prior to the Clarification and Request for Information, issued less than two months prior to the Interim Final Rule, a statutory requirement for registration of recreational model aircraft had never been suggested by the FAA. The FAA's position is revisionist history at its worst.

Certainly, an agency is not estopped from changing a view it believes to have been grounded upon a mistaken legal interpretation. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417, 113 S. Ct. 2151, 2161, 124 L. Ed. 2d 368 (1993); *citing Automobile Club of Mich. v. Commissioner,* 353 U.S. 180, 180–183, 77 S.Ct. 707, 707–709, 1 L.Ed.2d 746 (1957).

"On the other hand, the consistency of an agency's position is a factor in assessing the weight that position is due." *Id.* "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *Id., quoting INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, n. 30, 107 S.Ct. 1207, 1221, n. 30, 94 L.Ed.2d 434 (1987), *quoting Watt v. Alaska,* 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981). "How much weight should be given to the agency's views in such a situation, will depend on the facts of individual cases." *Id.;* Cf. *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 37, 102 S.Ct. 38, 44 (1981).

A "settled course of behavior embodies the agency's informed judgment that, by pursuing that course, it will carry out the policies committed to it by Congress. There is, then, at least a presumption that those policies will be carried out best if the settled rule is adhered to." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41 103 S. Ct. 2856, 2866 77 L. Ed. 2d 443 (1983), *quoting Atchison, T. & S.F. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 807–808, 93 S.Ct. 2367, 2374–2375, 37 L.Ed.2d 350 (1973).

Petitioner submits that the FAA's entirely new position regarding the status of recreational model aircraft as civil aircraft, and therefore the applicability of Part

36

47 registration, should be given no deference whatsoever, given the government's universally-consistent, and wholly-appropriate, treatment throughout the history of American aviation, and the FAA's failure to provide a reason for such change.

### 3. **Pub. L. 112-95** Codified the FAA's Then-Existing Distinction Between Recreational Model Aircraft and Civil Aircraft:

While the FAA might have, with proper justification, revised its interpretation of "aircraft" prior to Pub. L. 112-95, Congress has now codified the FAA's distinction between commercial "civil aircraft" and recreational model aircraft, removing any discretion the FAA might otherwise have had to simply change its interpretation.

Pub. L. 112-95, rather than embracing recreational model aircraft as "aircraft," adopted the FAA's position at that time, and from the beginning of time, that recreational model aircraft are distinct from civil aircraft and not subject to regulation.[12] Pub. L. 112-95 maintained the distinctions established by the FAA itself when it created separate regimes for: 1) civil unmanned aircraft, in § 332[13]

---

[12] E.g., "The Federal Aviation Administration's current policy is based on whether the unmanned aircraft is used as a public aircraft, civil aircraft or as a model aircraft." Unmanned Aircraft Operations in the National Airspace System, 72 Fed. Reg. 6689 (Feb. 13, 2007).

[13] § 332(a)(2)(A)(iii) of Pub. L. 112-95 mandates the FAA to establish registration procedures for civil unmanned aircraft (*i.e.*, commercial devices in the FAA's

37

and § 333; 2) public unmanned aircraft, in § 334; and 3) recreational model aircraft, in § 336.

Congress has adopted the FAA's consistent interpretation that recreational model aircraft are neither "civil aircraft" nor "public aircraft." As such they are not aircraft at all. 49 U.S.C. § 40102(a)(16).

### 4. It would be Inconsistent with the Clear Legislative Intent of § 336(a) to Bring Recreational Model Aircraft Under the Voluminous Body of Law Applicable to Civil Aircraft:

Within the Interim Final Rule, the FAA inexplicably argues that § 336, rather than shielding the hobby, constituted Congress' directive that the agency impose the full weight of its then-existing regulatory authority regarding actual "aircraft" onto recreational model aircraft.[14]

The FAA gets this ironic reading solely from the use of the word "aircraft" in defining "model aircraft." *See* § 336(c). Petitioner submits such shorthand use of the term does not evince an intent to bring recreational model aircraft within the

---

interpretation at the time). That authority was notably not cited by the FAA as an authority for registration of recreational model aircraft in the Interim Final Rule.

[14] "In Public Law 112–95, *Congress confirmed that unmanned aircraft, including those used for recreation or hobby purposes, are aircraft* consistent with the statutory definition set forth in 49 U.S.C. § 40102(a)(6)." [emphasis supplied] Interim Final Rule, 80 Fed. Reg. at 78599.

fold of actual aircraft – especially in the context of the FAA's interpretation at the time.  While one might, of necessity, use the word "train" in defining a "model train," it does not turn a model train into a train.

It is nonsensical to suggest that Congress, through § 336, sought to protect recreational model aircraft from the burdens of FAA regulation and, in the same breath, bring them under the full weight of FAA aircraft regulation for the first time in history. The Interim Final Rule is exactly the kind of thing § 336(a) was intended to prevent.

### 5. <u>**Registering Model Aircraft Owners is Not Authorized by 49 U.S.C. § 44101(a)**</u>:

49 U.S.C. § 44101(a) provides statutory authority only for the registration of aircraft, not people.  However, the FAA's registration process under Part 48 provides for the registration not genuinely of model aircraft, but of their owners – something wholly unauthorized under 49 U.S.C. § 44101(a), or elsewhere. The Interim Final Rule encourages owners to identify only themselves, and not their devices. *See* 14 C.F.R. § 48.115. There is no process for identifying the number or kind of model aircraft owned by the registrant - if any. The registrant is assigned a single number to be placed on all his model aircraft. Indeed, there is no requirement the registrant even own a model aircraft, or represent that he does. The

registry is not a registry of aircraft at all, but one of people – something not

contemplated or authorized by federal statute.

### 6.  **The Requirement of Oaths is not Authorized by 49 U.S.C. § 44101(a):**

The commitments regarding flight behavior, required as a prerequisite to

registration, are similarly without statutory authority. *See* EX19. These

commitments are not required of registrants of actual aircraft and there is no

statutory authority for requiring it of recreational model aircraft registrants.

An acknowledgment of the FAA's guidance would have been sufficient to

serve an educational function.  The apparent function of these oaths is to use a

registration process to frighten registrants into following guidelines that, while

perhaps advisable, are not mandated by law, and to establish a basis upon which to

entrap those who may not honor their commitments.

### B.  **The Clarification and Request for Information is Beyond the Scope of the FAA's Statutory Authority:**

Petitioner incorporates his arguments above regarding the Interim Final Rule

as applied to the Clarification and Request for Information's reference to a

requirement for registration of recreational aircraft under Part 47 and the

characterization of recreational model aircraft as "aircraft" generally.

### C. AC91-57A is Beyond the  Scope of the FAA's Statutory Authority:

The FAA's statutory authority to restrict flight in the DC-SFRA applies only to *civil aircraft*, which are required to operate at higher altitudes, and not to recreational model aircraft operating below the thresholds of navigable airspace applicable to civil aircraft.

The authority cited by the FAA in the establishment of the DC-SFRA[15] was 49 U.S.C. § 40103(b)(3), which authorizes the FAA to:

> (A) establish areas in the airspace the Administrator decides are necessary in the interest of national defense; and

> (B) by regulation or order, restrict or prohibit flight of *civil aircraft* that the Administrator cannot identify, locate, and control with available facilities in those areas. [emphasis supplied]

By referencing "civil aircraft," 49 U.S.C. § 40103(b)(3)(b) addresses itself to flights occurring in navigable airspace, *i.e.*, above the minimum thresholds for the flight of civil aircraft established by the FAA. *See* 14 C.F.R. § 91.119. Flights of civil aircraft occurring below that threshold are universally prohibited regardless of location.

_____

[15] Washington, DC Metropolitan Area Special Flight Rules Area, 73 Fed. Reg. 76195 (Dec. 16, 2008).

Because recreational model aircraft have been treated by the FAA and Congress as *sui generis*, distinct from "civil aircraft," they are not subject to FAA prohibitions under 49 U.S.C. § 40103(b)(3)(b).

Model aircraft activity typically occurs below the thresholds for civil aircraft operating in the navigable airspace, as guided by AC91-57A § 6(e). It occurs in that lower airspace in which the landowner has, "exclusive control of the immediate reaches of the enveloping atmosphere" recognized in *United States v. Causby*, 328 U.S. 256, 264, 66 S. Ct. 1062, 1067, 90 L. Ed. 1206 (1946); *see also Griggs v. Allegheny Cty., Pa.*, 369 U.S. 84, 82 S. Ct. 531, 7 L. Ed. 2d 585 (1962).[16] A blanket prohibition on airspace immediately above private property, regardless of any reasonable connection to an actual danger, not only lacks statutory authority, but threatens private property rights recognized in *Causby*. The airspace immediately above a landowner's property has not been incorporated by Congress into the "public highway" of navigable airspace. *United States v. Causby*, 328 U.S. 256, 260, 66 S. Ct. 1062, 1065, 90 L. Ed. 1206 (1946); *see* 49 U.S.C.

---

[16] The safety standards of AC91-57 §3(c) and AC91-57A §6(c)(5) and §6(e) which guide model aircraft operators to fly no higher than 400 feet above the surface and to notify airports when flying within three (later five) miles imply recognition of a lower zone of private ownership and control, consistent with *Causby,* wherein model aircraft may avoid entering the navigable airspace and avoid potential interaction with air commerce.

42

§ 40103(a)(2). Activities solely in that private airspace that do not genuinely affect or endanger air commerce are not properly within the FAA's jurisdiction.

By applying the DC-FRZ and the DC-SFRA to recreational model aircraft, the FAA has stepped far outside the scope of 49 U.S.C. § 40103(b)(3)(b) – applying it to activities it was never intended to prohibit. Petitioner submits that Congress, in giving the FAA authority to prohibit flights of civil aircraft in designated areas, did not intend the FAA to prohibit people from playing with flying toys (*e.g.*, recreational model aircraft, Frisbees, paper airplanes) below the tree lines in their own backyards.

In §6(b) of AC91-57A, the FAA observes,

Unmanned aircraft, including model aircraft, may pose a hazard to manned aircraft in flight and to persons and property on the surface if not operated safely. Model aircraft operations that endanger the safety of the National Airspace System, particularly careless or reckless operations or those that interfere with or fail to give way to any manned aircraft may be subject to FAA enforcement action.

The above statement is quite accurate, and constitutes the FAA's sole appropriate, and congressionally-authorized, remedy to any perceived concerns regarding recreational model aircraft. Pub. L. 112-95 § 336(b). The FAA has the authority to deal appropriately, and severely, with reckless behavior. However, it does not justify nor authorize the FAA to prohibit ***all*** model aircraft operations

43

within the DC-FRZ and the DC-SFRA, even those conducted safely and at extremely low altitudes.

IV.   **The Orders are Arbitrary and Capricious:**

    A.   **The Interim Final Rule is Arbitrary and Capricious:**

        1. **Standard of Review:**

Assuming, *arguendo*, the FAA has statutory authority to mandate registration of all contrivances that fly as "aircraft," pursuant to 49 U.S.C. § 44101(a), its application of that authority via the Interim Final Rule is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

The FAA's various rules regarding small flying contrivances, both explicitly stated and implied by the expanded definition of "aircraft," evince a failed "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 103 S.Ct. 2856, 2866-67, 463 U.S. 29, 43 (1983), *quoting Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245–246, 9 L.Ed.2d 207 (1962).

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

44

The reviewing court should not attempt itself to make up for such deficiencies: "We may not supply a reasoned basis for the agency's action that the agency itself has not given."

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983), *quoting SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

Simply put, the FAA's rules regarding real aircraft, when applied to recreational model aircraft and other small flying devices, make no sense.  The absurd and contradictory results in applying full-size aircraft regulations to these toys (*e.g.*, altitude restrictions, onboard documentation) show a lack of "consideration of the relevant factors" and "a clear error of judgment." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983)*, quoting *Bowman Transp. Inc. v. Arkansas-Best Freight System*, 419 U.S.281, 285, 95 S.Ct. 438, 442. 42 L Ed. 2d 447 (1974).

Although the arbitrary and capricious standard of review is deferential, the court will 'intervene to ensure that the agency has examine[d] the relevant data and articulate[d] a satisfactory explanation for its action. Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, we must undo its action.'

*BellSouth Corp. v. F.C.C.*, 162 F.3d 1215, 1221-22 (D.C. Cir. 1999), *quoting*

*Petroleum Communications, Inc. v. FCC,* 22 F.3d 1164, 1172 (D.C.Cir.1994).

2. **The FAA Denies that a Change has Been Made, and Therefore Fails to Provide the Justification for Change Required by the APA:**

The Administrative Procedure Act requires an agency to provide more substantial justification when "…its new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account." *Smiley v. Citibank (South Dakota), N. A.,* 517 U.S. 735, 742, 116 S. Ct. 1730, 135 L.Ed.2d 25 (1996). "It would be arbitrary and capricious to ignore such matters." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515, 129 S. Ct. 1800, 1811, 173 L. Ed. 2d 738 (2009). An agency's decision to change course may be arbitrary and capricious if the agency ignores or countermands its earlier factual findings without reasoned explanation for doing so. The agency must explain why it now rejects the considerations that led it to adopt that initial policy. *Id.* at 535, (Kennedy, J., concurring).

"To acknowledge that circumstances have changed … is not to eliminate the burden upon the agency to set forth a reasoned analysis in support of the particular changes finally adopted." *Farmers Union Cent. Exch., Inc. v. F.E.R.C.*, 734 F.2d 1486, 1500 (D.C. Cir. 1984).

46

"An agency cannot simply disregard contrary or inconvenient factual determinations that it made in the past, any more than it can ignore inconvenient facts when it writes on a blank slate." *F.C.C. v. Fox*, at 537, (Kennedy, J., concurring). The core requirement an agency must meet when changing course is that it must "provide reasoned explanation for its action," which "would ordinarily demand that it display awareness that it *is* changing position." [emphasis in original] *Nat'l Ass'n of Home Builders v. E.P.A.*, 682 F.3d 1032, 1038 (D.C. Cir. 2012), *quoting F.C.C. v. Fox*.

In the Interim Final Rule, the FAA has taken the position that recreational model aircraft have ***always*** been aircraft and that a registration requirement is nothing new.  The significance of the radical change the FAA is actually making is ignored, rendering the FAA's action arbitrary and capricious. "Unexplained inconsistency" between agency actions is "a reason for holding an interpretation to be an arbitrary and capricious change." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 981, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005).

The FAA can hardly be said to justify this radical positional change properly when it denies there was any change at all - instead taking the frivolous position that, "[h]istorically, the FAA has considered model aircraft to be aircraft that fall within the statutory and regulatory definitions of an aircraft…" Interpretation of

47

the Special Rule for Model Aircraft, 79 Fed. Reg. 36172 (June 25, 2014). The FAA

denies the existence of this obvious change, despite voluminous evidence to the

contrary, because acknowledging such a post-Pub. L. 112-95 change would

inescapably subject it to the prohibitions of § 336(a).

3. **Laws Applicable to Aircraft have no Rational Application to Model Aircraft and Defy Compliance:**

The FAA's sudden re-characterization of any contrivance that flies as

"aircraft," and thereby allowing it to shoehorn recreational model aircraft into

aircraft regulations, places hobbyists in an untenable no-man's land of compliance.

The FAA has taken us down a rabbit hole of irrationality to achieve its goal of

legally justifying registration.

Model aircraft hobbyists have been guided for decades to take our toys no

higher than 400 feet above the surface. AC91-57 § 3(c); AC91-57A §6(e).

However, as aircraft pilots, we are now also legally mandated to comply with

conflicting higher *minimum* altitudes, pursuant to 14 C.F.R. § 91.119, that place

our model aircraft squarely in the middle of navigable airspace occupied by real

aircraft.  It is impossible to comply with both directives.  Surely forcing

recreational model aircraft into the navigable airspace of real aircraft does not

rationally further the FAA's goal of protecting that airspace.

48

It is similarly impossible for recreational model aircraft operators to comply with the FAA's requirement that no person may operate an aircraft "unless it has within it" the registration, as well as an airworthiness certificate and other documents that are inappropriate to recreational model aircraft, (14 C.F.R. § 91.203(a); 14 C.F.R. § 91.9), and that the airworthiness certificate be, "displayed at the cabin or cockpit entrance so that it is legible to ***passengers or crew***. [emphasis supplied]" 14 C.F.R. § 91.203(b).[17]

These contradictions and inconsistencies created by the Interim Final Rule are, "…so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983).

In addition, the FAA's extension of the definition of "aircraft" legally requires the registration of some flying devices for which there can be no rational basis. 14 C.F.R. § 48.1(b), created by the Interim Final Rule, embodies the FAA's position that Part 48 registration is merely an "alternative" to the registration

---

[17] The requirement that aircraft keep these documents near the cockpit and legible to passengers or crew removes any doubt that only manned aircraft were in the contemplation of the government as those regulations were adopted.

49

process under Part 47 and mandated for **all** unmanned aircraft by 49 U.S.C. §

44101(a). Interim Final Rule, 80 Fed. Reg. at 78594-95.

Complying with 14 C.F.R. § 48.1(b), those recreational model aircraft that

do not meet the weight threshold for Part 48 registration,[18] as well as flying

contrivances that are not part of a small unmanned aircraft system[19] (which would

include, *e.g.*, paper airplanes, Frisbees) must now, by law, register under Part 47 to

comply with 49 U.S.C. § 44101(a) and 14 C.F.R. § 48.1(b).[20]

Any contrary interpretation of the existing regulations in the context of the

new application of "aircraft," while seemingly more rational, would nonetheless be

plainly erroneous and inconsistent with those regulations. *See In re Polar Bear*

*Endangered Species Act Listing & Section 4(d) Rule Litig.,* 709 F.3d 1, 11

(D.C.Cir. 2013).

---

[18] *See* 14 C.F.R. § 48.1(a); 14 C.F.R. § 48.15(b).

[19] *Id.*

[20] Indeed, an attorney/pilot obtained an exemption from the FAA under § 333 of
Pub. L. 112-95 for an "unmanned aircraft system" that consisted of a paper
airplane with a tiny motor, known as a "Tailor Toys Powerup 3.0." Exemption No.
12602, Regulatory Docket No. FAA–2015–1810; *see* EX26;  EX59.

50

4. **The FAA's Interpretation would Render the Statute Irrationally, and Unconstitutionally, Vague:**

If the definition of "aircraft" is not so broad as to include, *e.g.*, paper airplanes, then we are left with no clarity about what the FAA considers to be an aircraft, and upon what rational basis that determination is made. People are entitled to a coherent and applicable definition of a term governed by such a massive and important body of federal regulation.  It should not be subject to the FAA's ever-changing whim. When an agency seeks to change its interpretation of so fundamental a term as is this, it must act with clarity, such that a reviewing court can discern if its actions are within the agency's mandate from Congress. *See Atchison, T. & S. F. Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 806-07, 93 S. Ct. 2367, 2374, 37 L. Ed. 2d 350 (1973).  The interpretation we are left with here by the FAA, *i.e.*, that any contrivance that flies is a federally-regulated aircraft, exceeds any reasonable scope of congressional authority.  Otherwise, it is so murky and undefined as to be not only unusable, but unconstitutionally vague. 5 U.S.C. § 706(2)(B); *see United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

The core irrationality of the FAA's approach to recreational model aircraft is revealed in its treatment of manned "ultralight" aircraft.  In a bizarre twist, the operator of an ultralight aircraft, which can weigh up to 254lbs, carry a human

51

pilot and five gallons of gasoline,[21] need not register it, but the operator of a small flying plastic model of that exact same aircraft, using battery powered electric motors and occupied only by a tiny plastic figurine pilot, must register before flying his toy under the Interim Final Rule. 14 C.F.R. § 103.7(c). This is presumably because the FAA has not treated ultralights as actual aircraft, despite their manned nature. Until the Interim Final Rule, recreational model aircraft shared that same status.

No rational bases for these distinctions are provided anywhere by the FAA, and Petitioner submits that none exists.

There are other inconsistencies in the FAA's application of the word "aircraft." The FAA states on its website they "…did not intend for rockets, unmanned free balloons, moored balloons and kites to be registered, as those devices are **_generally not considered_** 'aircraft.'" [emphasis supplied][22] However, the legal criteria of the definition are as applicable to those are devices as they are to model aircraft, which are also "generally not considered" aircraft.

---

[21] 14 C.F.R. § 103.1.

[22] FAQ, Question 16, EX68.

52

**B. The Clarification and Request for Information is Arbitrary and Capricious:**

Petitioner incorporates his arguments regarding the Interim Final Rule as applied to the Clarification and Request for Information's reference to a requirement for registration of recreational aircraft under Part 47 and the characterization of recreational model aircraft as "aircraft" generally.

**C. AC91-57A is Arbitrary and Capricious:**

Assuming, *arguendo*, the prohibitions contained in AC91-57A are within the FAA's statutory authority, they would be unlawful as being arbitrary and capricious. 5 U.S.C. § 706(2)(A).

**1. The FAA Fails to State a Rationale for Applying the DC-SFRA to Model Aircraft:**

In AC91-57A, the FAA cites its authority to take enforcement action against model aircraft operators who endanger the airspace. [23] It then jumps to creating a prohibition without ever finding that the proscribed activity would create any actual danger. The FAA provides no findings or decision-making process

---

[23] "Public Law 112-95 recognizes the authority of the Administrator to pursue enforcement action against persons operating model aircraft who endanger the safety of the National Airspace System."

53

whatsoever in support of its prohibition for the Court to evaluate. As with the other orders under review, AC91-57A constituted a change in interpretation and policy that required specific justification.

### 2. AC91-57A is not Rationally Related to Preventing Civil Aircraft Attacks on the Nation's Capital:

In establishing the DC-SFRA, the FAA based its action on a finding that there was the threat of "… terrorists launching attacks using stolen or hijacked planes…" given the FAA's "…estimates that there are approximately 200,000 airplanes based at over 19,000 landing facilities within the United States." Washington, DC Metropolitan Area Special Flight Rules Area, 73 Fed. Reg. 76195, 76201 (Dec. 16, 2008). Recreational model aircraft were not within the rationale supporting that rulemaking.

In issuing AC91-57A, the FAA did not allege that model aircraft operating in the DC-FRZ or the DC-SFRA would pose the types of risks to national security that those zones were created to avoid. *See* 14 C.F.R. § 93.331. Such an allegation, had it been made, would have been frivolous. Recreational model aircraft operating miles from federal buildings, but well within the 15NM DC-FRZ pose no threat at all, and the suggestion such a threat would be posed by tiny model aircraft operating in the far-flung suburbs, almost 30 miles from Reagan National Airport, but well within the DC-SFRA, would be absurd.

54

The FAA's own actions, in failing to apply the prohibition for years, or publicize its application for months, and then essentially overriding it with a NOTAM a little over a month later, belie any argument the FAA may make that this prohibition was genuinely based in protecting national security.

Again, the FAA made no such allegation, rational or otherwise, upon which to base the prohibitions of AC91-57A, nor justification for this abrupt change in policy, so the reasonableness of such hypothetical bases need not be considered by the court. The court "… may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 103 S.Ct. 2856, 2866-67, 463 U.S. 29, 43 (1983), *citing SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

AC91-57A prohibits model aircraft flight anywhere in the DC-FRZ and the DC-SFRA. It applies to all "model aircraft" – regardless of size, weight, power source, or whether the device is part of a control system.[24] In addition, because the

---

[24] It is noteworthy that some model aircraft are quite small.  The Cheerson CX-10, for example, is less than 2" x 2" and weighs less than half an ounce. It has a flight time of around four minutes and a range of less than 70 feet. EX28. However, other than its size and corresponding capabilities, it is identical in basic function to larger consumer multirotor devices that are presumably more the intended target of the FAA's actions. As such, it is subject to virtually all of the same mandates and

55

FAA interprets the statutory definition of "aircraft" as applying to all flying contrivances, these zones are also applicable to the flight of paper airplanes, Frisbees, etc.

While the FAA might reasonably have argued that restrictions regarding some very high payload-capacity and high-range model aircraft at some near distance from potential targets of national security concern pose a danger (and no such allegation was made), banning all flying contrivances at a distance of many miles from Reagan National Airport, and at all altitudes, has no rational connection to a federal governmental interest.

As with the myriad requirements imposed when recreational model aircraft are re-characterized as real aircraft, AC91-57A's prohibition on eye-level flights of tiny toys over private property, are too remote from any legitimate purpose to be sustained.  "[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 2262, 96 L. Ed. 2d 64 (1987).

---

prohibitions. The only realistic danger these "aircraft" may present is as a choking hazard to small children.

56

V.    **The Orders Violate the Notice and Comment Requirements of the Administrative Procedure Act:**

    A. **The Interim Final Rule Violated the Notice and Comment Requirements of the Administrative Procedure Act:**

        1. **Standard of Review:**

The Interim Final Rule created a new registration regulation under Part 48, and brought recreational model aircraft under Part 47 registration as "aircraft." Both of these actions constituted legislative rulemaking and required compliance with the notice and comment provisions of 5 U.S.C. § 553(b) and (c). The FAA did not have "good cause" to dispense with that process under 5 U.S.C. § 553(b)(3)(B). 5 U.S.C. § 706(2)(d).

Within the Interim Final Rule, the FAA acknowledge the notice and comment requirements of 5 U.S.C. § 553(b) and (c) would otherwise apply, but contended it had "good cause" to ignore them, pursuant to 5 U.S.C. § 553(b)(3)(B). *See* Interim Final Rule, 80 Fed. Reg., at 78596.

The FAA observed that 5 U.S.C. § 553(b)(3)(B), "…authorizes agencies to dispense with notice and comment procedures for rules when the agency for 'good cause' finds that those procedures are 'impracticable, unnecessary, or contrary to the public interest.'" *Id.*

57

The FAA noted that,

> With the current unprecedented proliferation of new sUAS [small unmanned aircraft systems], registration allows the FAA a direct and immediate opportunity to educate sUAS owners.[25] Aircraft registration also allows the FAA and law enforcement agencies to address non-compliance by providing the means by which to identify an aircraft's owner and operator.

*Id.*

The FAA contended there was a pressing need for a new registration system because of the impracticality of using Part 47 registration for this process.  *Id.* at 78598-99.

Ultimately, the FAA stated it,

> …has determined that it is impracticable and contrary to the public interest in ensuring the safety of the NAS and people and property on the ground to proceed with further notice and comment on aircraft registration requirements for small unmanned aircraft before implementing the streamlined registry system established by this rule.

*Id.*, at 78599.

The Court's review of an agency's legal conclusion of good cause is *de novo*. *Sorenson Commc'ns Inc. v. F.C.C.*, 755 F.3d 702, 706 (D.C. Cir. 2014).  To accord the agency's determination of good cause some measure of deference "would be to run afoul of congressional intent." *Id.*

---

[25] Owner education is not part of the statutory registration process authorized by 49 U.S.C. § 44101(a).

58

The good cause exception should be "narrowly construed and only

reluctantly countenanced." *Mack Trucks, Inc. v. E.P.A.*, 682 F.3d 87, 93 (D.C. Cir.

2012); *Air Transp. Ass'n of Am. v. Dep't of Transp.*, 900 F.2d 369, 379 (D.C. Cir.

1990), *vacated (on grounds of mootness)*, 498 U.S. 1077, 111 S. Ct. 944, 112 L.

Ed. 2d 1033 (1991), and *vacated*, 933 F.2d 1043 (D.C. Cir. 1991).

"This exception should be read narrowly. It is an important safety valve to

be used where delay would do real harm. It should not be used, however, to

circumvent the notice and comment requirements whenever an agency finds it

inconvenient to follow them." *State of N. J., Dep't of Envtl. Prot. v. U.S. Envtl.*

*Prot. Agency*, 626 F.2d 1038, 1046 (D.C. Cir. 1980), *quoting U.S. Steel Corp. v.*

*U.S. E.P.A.*, 595 F.2d 207, 214 (5th Cir. 1979).

"Impracticability is an 'inevitably fact-or-context dependent' inquiry."

*Sorenson*, at 706, *quoting Mid–Tex Elec. Coop. v. FERC,* 822 F.2d 1123, 1132

(D.C.Cir.1987).

## 2. **The Interim Final Rule does not Address an Imminent Hazard Requiring Emergency Action:**

This Court has noted:

In the past, we have approved an agency's decision to bypass notice and comment where delay would imminently threaten life or physical property. *See e.g., Jifry v. FAA,* 370 F.3d 1174, 1179 (D.C.Cir.2004) (upholding assertion of good cause when rule was **"necessary to prevent a possible imminent hazard to aircraft, persons, and**

59

**property within the United States"**); *Council of the S. Mountains, Inc. v. Donovan,* 653 F.2d 573, 581 (D.C.Cir.1981) (noting the case was one of "life-saving importance" involving miners in a mine explosion); *see also Jifry,* 370 F.3d at 1179 (observing the good-cause exception should be invoked only in **"*emergency* situations ... or where delay could result in serious harm."** [emphasis in original]

*Sorenson Commc'ns Inc. v. F.C.C.*, 755 F.3d 702, 706 (D.C. Cir. 2014).

*Jifry* involved a regulation which provided for automatic suspension by the FAA of airman certificates upon written notification from the TSA that the pilot posed a security threat. Emergency action was, "…necessary to prevent a possible imminent hazard to aircraft, persons, and property…" *Id.* The agency's action under the regulation was narrowly tailored to allow *specific* action against *specific* defined threats. The danger posed by those threats was clear and imminent, and directly addressed by the emergency regulation.

The Interim Final Rule, however, ostensibly establishes only a registration process. It involves no safety inspections or other means to directly impact air safety, much less to intervene on an imminent threat to life or physical property.[26]

---

[26] Nor is it particularly, or even potentially, effective in its stated goal. If there are a significant number of cases where recreational model aircraft that were operated unsafely were traced to its owner by use of an FAA registration number, they have not been publicized by the FAA. Petitioner's FOIA request on this issue remains pending and not timely answered. Given that registration cannot, by law, be used as evidence of ownership, it is unclear how this process could *ever* be used in an enforcement proceeding. *See* 49 U.S.C. § 44103(c)(2); 14 C.F.R. §48.25(c).

### 3. __Any Timing Concerns were Caused by the FAA's Own Knowing Delay:__

No particular circumstances called for emergency action. Indeed, the Interim Final Rule, which became only effective five days after issuance, did not require existing owners to register their recreational model aircraft until almost two months later, at the earliest. 14 C.F.R. § 48.5(a). There was apparently no particular rush.

To the degree there was anything "imminent" on December 16, 2015, its imminence was a long time in coming. As evidenced by the FAA's escalation in regulatory publications regarding model aircraft going back almost a decade, the development of model aircraft technologies, and the corresponding growth of the hobby, had been occurring for quite some time. Certainly an uptick in Christmas sales was foreseeable, as the FAA ultimately foresaw it. An agency is foreclosed from relying on the good cause exception by its own delay in promulgating a regulation. *Air Transp. Ass'n of Am. v. Dep't of Transp.*, 900 F.2d 369, 379 (D.C. Cir. 1990), *vacated (on grounds of mootness)*, 498 U.S. 1077, 111 S. Ct. 944, 112 L. Ed. 2d 1033 (1991), and *vacated*, 933 F.2d 1043 (D.C. Cir. 1991).[27]

------------------------

[27] If the Court accepts the FAA's argument that the registration of model aircraft was always required, then the regulation was almost ninety years late in coming.

61

### 4. **The Application of Part 47 Registration was Also Legislative Rulemaking, Requiring Notice and Comment:**

In addition to creation of the registration process itself, the Interim Final Rule includes the FAA's expanded definition of "aircraft," used to bring recreational model aircraft under Part 47 registration and presumably all other aircraft regulations. That action was also legislative rulemaking that required notice and comment under the Administrative Procedure Act.

By bringing these toys within the regulatory penumbra of "aircraft" the FAA has created myriad new duties for owners and operators of model aircraft, having the force and effect of law, which required notice and comment. *See Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1201, 191 L. Ed. 2d 186 (2015), *citing Chrysler Corp. v. Brown,* 441 U.S. 281, 302–303, 99 S.Ct. 1705, 60 L.Ed.2d 208. This change is one "affecting individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302, 99 S. Ct. 1705, 1718, 60 L. Ed. 2d 208 (1979), *quoting Morton v. Ruiz*, 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974).

### B. **The Clarification and Request for Information Violated the Notice and Comment Requirements of the Administrative Procedure Act:**

Petitioner incorporates his arguments regarding the Interim Final Rule as applied to the Clarification and Request for Information's reference to a

62

requirement for registration of recreational aircraft under Part 47 and the

characterization of recreational model aircraft as "aircraft" generally.

### C. AC91-57A Violated the Notice and Comment Requirements of the Administrative Procedure Act:

AC91-57A is a legislative rule, posing as an advisory circular.  As such, its

adoption was subject to the notice and comment requirements of 5 U.S.C. § 553(b)

and (c), which were not followed.

While its predecessor, AC91-57, sought only "voluntary compliance," with

safety standards, AC91-57A contains specific prohibitions regarding areas where

model aircraft may be operated. It does much more than interpret. It extends the

prohibitions of the DC-FRZ and the DC-SFRA to include recreational model

aircraft operating below the navigable airspace.

As such, it directly affects individual rights and obligations. It is a legislative

rule which required notice and comment pursuant to 5 U.S.C. § 553(b) and (c). *See

Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1201, 191 L. Ed. 2d 186

(2015); *Chrysler Corp. v. Brown*, 441 U.S. 281, 302, 99 S. Ct. 1705, 1718, 60 L.

Ed. 2d 208 (1979), *quoting Morton v. Ruiz*, 415 U.S. 199, 232, 94 S.Ct. 1055, 1073

39 L.Ed.2d 270 (1974).

## VI.     Timeliness of Petitions:

49 U.S.C. § 46110(a), which is the jurisdictional basis for this Court's review of the FAA's actions, provides, "[t]he petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day."

The Petitions in Case No. 16-1011 and 16-1008 were not filed with 60 days of the orders, but there were reasonable grounds for the timing of their filing.

### A.  Timeliness of Case No. 16-1011 (Clarification and Request for Information):

The Clarification and Request for Information was issued on October 22, 2015. Petitioner filed his Petition on January 15, 2016.

The function of the Order was to review the status of registration requirements for recreational model aircraft, and to announce the formation of a registration task force to explore and develop recommendations to streamline the registration process.

The order makes passing reference to the FAA's position that registration of recreational model aircraft is required under 49 U.S.C. § 44101(a) and 14 C.F.R.

64

47.3 § (b)(1). It is this statement of position, and its potential effect on hobbyists, that led Petitioner to seek review of that order.

The issue of Part 47 registration was raised within the Order in the context of stating Part 47 registration was not practical for application to recreational model aircraft. The order does not direct hobbyists to begin registration under Part 47. On the contrary, the clear implication is that they should await further rulemaking, which came in the form of the Interim Final Rule.

In this context, the FAA's statement in the Clarification and Request for Information that Part 47 is applicable to recreational model aircraft cannot be said to, "…mark the 'consummation' of the agency's decisionmaking process." *Safe Extensions, Inc. v. F.A.A.*, 509 F.3d 593, 598 (D.C. Cir. 2007), so as to start the clock on filing a Petition for Review.

The inchoate nature of the FAA's ultimate treatment of recreational model aircraft registration made it reasonable for affected parties to await the finality of the Order ultimately issued on December 16, 2015. This Court has held,

> [A]n organization had reasonable grounds for waiting more than sixty days to file a challenge when the group was '[a]ware that the rule might be undergoing modification[ ] and unable to predict how extensive any modification would be,' and therefore 'elected to wait until the regulation was in final form before seeking review.'

65

*Id.* at 604, *quoting The Paralyzed Veterans of Am. v. C.A.B.*, 752 F.2d 694 (D.C. Cir. 1985), *rev'd sub nom. U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 106 S. Ct. 2705, 91 L. Ed. 2d 494 (1986).

To the degree the order might otherwise be claimed by the FAA to be a final order subject to review, the FAA's interaction with the public regarding the order and its substance has been evasive, misleading, and confusing, leaving Petitioner and others unclear as to the FAA's position on the issue of the application of Part 47 registration to recreational model aircraft. The FAA's unclear language and subsequent treatment of the Order were intended to confuse Petitioner and similarly-situated persons as to the FAA's intentions. *Id.*

As recently as December 22, 2015, the FAA stated on its website that "**Registration is not required for model aircraft** operated solely for hobby or recreational purposes." [emphasis in original]. EX20.

The aforesaid statement by the FAA is in direct contradiction of the position stated in the Order of October 22, 2015.

Petitioner only became aware of the position in the Order contradicting the FAA's website information in the few days preceding his Petition. The brief intervening time between Petitioner's actual notice of the Order and filing of the

Petition was necessary for Petitioner to explore and confirm the good faith basis for this action.

### B. **Timeliness of Case No. 16-1008 (AC91-57A):**

The Petition in Case No. 16-1008 was not filed within 60 days of the relevant order. AC91-57A was issued on September 2, 2015. The Petition was filed on January 12, 2016.

Petitioner had reasonable grounds for not filing by the 60th day. The notice was not reasonably clear as to its intent, provided for no comment period, and the FAA applied the order in a delayed and contradictory manner that misled and confused Petitioner and the general public as to the rule contained therein.

The Federal Register notice regarding the issuance of AC91-57A, located at 80 Fed. Reg. 54367 (Sept. 9, 2015) (JA2), does not provide reasonable notice of the FAA's action. It does not contain the terms of the order, or even provide a direct link to it. Rather, it provides a link to the FAA's entire voluminous body of advisory circulars – documents which should not contain legislative rules in any event. If one were to somehow manage to locate the order by this means, AC91-57A does not describe its effect in clear terms – making no direct reference to the

67

creation of a 30 mile no fly zone. Determining that would have required additional complex and involved research.

AC91-57A changed the rights and duties of Petitioner and others and constituted legislative rulemaking. It required a formal notice and a comment period under the Administrative Procedure Act,[28] which would have provided Petitioner with formal notice of the FAA's actions and substantial additional time to respond to any resulting final action.

The FAA's application of the DC-SFRA to model aircraft has a convoluted and confusing history.  Though the 30 mile DC-SFRA became effective in 2009, the FAA did not apply it to model aircraft and continued to describe on its website, at least as recently as May 13, 2015, the application only of a 15 mile zone (*See* EX18).

Though the FAA ostensibly created this model aircraft no fly zone through AC91-57A as a matter of national security, they continued, inexplicably, to allow recreational model aircraft to operate within it. It was only months later, after the 60 day period expired, and after Petitioner challenged the registry, that the FAA launched its "No Drone Zone" media blitz. Petitioner learned of the effect of the

---

[28] 5 U.S.C. § 553(b) & (c).

order at the same time as most Washington area residents, when wide media

coverage exploded on December 29, 2015, indicating the FAA had just extended

the "no drone zone" to 30 miles (*See, e.g.*, EX11-17)[29]

   The FAA's confusion of the public on this issue continues to this day. In

February of 2016, as abruptly as the FAA prohibited recreational model aircraft

within the DC-SFRA, the FAA unceremoniously reversed that position (subject to

certain caveats) by its issuance of NOTAM 2/2069. EX55.

   Despite the issuance of the aforesaid NOTAM, the FAA's website and

safety app continue to show, "…flying in the Special Flight Rules Area around

Washington, D.C. is prohibited." *See* EX21-22.

   The FAA's interaction with the public regarding the order and its substance

has been evasive, misleading, and confusing, leaving Petitioner and others unclear

as to the FAA's position on the application of the DC-SFRA. The FAA's unclear

language and subsequent treatment of the Order were intended to confuse

Petitioner and similarly-situated persons as to the FAA's intentions.  Under these

circumstances, there were reasonable grounds for Petitioner's delay. *See Safe*

_____

[29] The FAA had just completed a well-publicized campaign to caution children
who would receive "drones" for Christmas that they needed to register them,
without mention that it would be (and had long been, in the FAA's revisionist
history) illegal to fly them in the DC-SFRA.

*Extensions, Inc. v. F.A.A.*, 509 F.3d 593, 603 (D.C. Cir. 2007).

The intervening time between Petitioner's actual notice of the Order and filing of the Petition was necessary for Petitioner to determine the origin of the prohibition; and explore and confirm the good faith basis for this action.

## CONCLUSION & RELIEF SOUGHT

The FAA's Orders: 1) violated § 336(a) of Pub. L. 112-95; 2) lacked statutory and constitutional authority; 3) were arbitrary and capricious; and 4) violated the notice and comment requirements of the Administrative Procedure Act.

Petitioner requests this Honorable Court to reverse the Orders on the grounds set forth by Petitioner, and order the FAA to permanently destroy the recreational model aircraft registry and refund registration moneys received.

# **AFFIDAVIT**

The undersigned confirms, under penalty of perjury, that the representations of fact contained herein are true and correct, and the documents submitted herewith are authentic to the best of his knowledge, information and belief.


            /s/ *John A. Taylor*
John A. Taylor


Respectfully Submitted,

            /s/ *John A. Taylor*
John A. Taylor, *pro se*
4115 Ferrara Drive
Silver Spring, Maryland 20906
(301) 942-3040
jat@wolfenstock.com

71

## <u>CERTIFICATE OF SERVICE</u>

I HERBY CERTIFY that I electronically filed the foregoing Brief, along with referenced Addenda and the Joint Appendix, with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

_____ /s/ *John A. Taylor*
John A. Taylor
